Filing # 47455333 E-Filed 10/11/2016 11:30:23 AM

IN THE CIRCUIT COURT OF
THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

AVANTE GROUP, INC.,                          CASE NO.:

    Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Avante Group Inc. sues Defendant, Lexington Insurance Company, and alleges:

## JURISDICTION, VENUE AND THE PARTIES

1.    This is an action for damages in excess of Fifteen Thousand ($15,000) exclusive of interest, costs and attorneys' fees.

2.    At all material times, Plaintiff, Avante Group Inc. ("Avante") was and is a Florida corporation licensed to do business in Florida, and conducting business in Broward County, Florida.

3.    Defendant Lexington Insurance Company ("the Insurance Company") is licensed to do business in Florida and conducts business in Broward County.

4.    At all material times, Avante owned the property located at 4601 Sheridan Street, Hollywood, Broward County, Florida 33021, commonly known as the Emerald Hills Executive Plaza (the "Property").

5.    The Insurance Company issued policy of insurance number 019946729 to Avante with effective dates of May 1, 2013 to May 1, 2014 and a renewal policy with effective dates of

EXHIBIT

1

May 1, 2014 to May 1, 2015 ("the Policy"). A copy of the Policy is attached and incorporated hereto as Exhibit "A".

6.      The Policy issued to Avante insures various locations including the Property located at 4601 Sheridan Street, Hollywood, Florida 33021.

7. .    At all material times, the Policy provided insurance coverage for the Property for all losses, damages and expenses Avante suffered and incurred.

### GENERAL ALLEGATIONS

8.      In March of 2014, the Property sustained substantial interior water damages resulting from rain events.

9.      In April of 2014, the Property sustained substantial interior water damages resulting from rain events.

10.     In May of 2014, the Property sustained substantial interior water damages resulting from rain events.

11.     In June of 2014, the Property sustained substantial interior water damages resulting from rain events.

12.     As a result of the water intrusion events, Avante's tenants were forced to evacuate their offices and the tenants could not return to the building.

13.     Avante incurred costs for tenant lease settlements, temporary tenant rent, moving and storage, hold over rent expenses, temporary office expenses and loss of revenue.

14.     In accordance with the terms and conditions of the Policy, Avante provided notice of its claim.

≡ BERGER SINGERMAN

1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131
t: 305-755-9500 | f: 305-714-4340 | WWW.BERGERSINGERMAN.COM

15.     The Insurance Company acknowledged Avante's claim and assigned it claim number 7595278775US ("Claim").

16.     Avante complied with the terms and conditions of the policy and all conditions precedent to bringing this action have been performed, waived or excused.

17.     The Insurance Company denied Avante's Claim and has failed to issue payment to Avante for the losses it sustained.  A copy of the August 1, 2016 denial letter is attached hereto as Exhibit "B".

18.     Avante has retained Berger Singerman to represent it in this matter and is obligated to pay the firm legal fees, including reasonable attorneys' fees, and costs.

19.     Avante is entitled to recover the legal fees incurred in bringing this action pursuant to Chapter 627.428, Florida Statutes.

### COUNT 1 – BREACH OF CONTRACT

20.     Avante incorporates the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21.     By failing to pay Avante for its damages, the Insurance Company has breached the Policy.

22.     As a result of the Insurance Company's breach of the Policy, Avante has suffered damages, exclusive of costs and attorneys' fees, in excess of the jurisdictional limits of this Court.

WHEREFORE, Avante Group, Inc. demands entry of a judgment in its favor and against Lexington Insurance Company for damages in excess of the jurisdictional limits of this Court,

≣ BERGER SINGERMAN

1450 BRICKELL AVENUE | SUITE 1900 | MIAMI, FLORIDA 33131
t· 305-755-9500 | f· 305-714-4340 | WWW.BERGERSINGERMAN.COM

together with pre-and post-judgment interest, attorneys' fees, costs, and such other relief as this

Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable as a matter of right.

Dated this 11th day of October, 2016.

Respectfully submitted,

**BERGER SINGERMAN LLP**
*Attorneys for Plaintiff*
1450 Brickell Avenue, Suite 1900
Miami, Florida 33130
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: */s/ Michael J. Higer*
  Michael J. Higer
  Florida Bar No. 500798
  mhiger@bergersingerman.com
  Gina Clausen Lozier
  Florida Bar No. 38985
  gclausen@bergersingerman.com
  DRT@bergersingerman.com

7321018-1

- 4 -

# EXHIBIT

# A

# LEXINGTON INSURANCE COMPANY
## Standard Property Conditions

This endorsement effective  05/01/2014  forms a part of Policy Number  019946729

issued to  AVANTE GROUP, INC.

by

LEXINGTON INSURANCE COMPANY          (hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the Insured, a minimum premium of  $127,375          shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of  $10,000          shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

|   |   |   |
|---|---|---|
| $10,000 | deductible applying to | AOP AND AS PER POLICY FORM |
|  | deductible applying to |  |
|  | deductible applying to |  |
|  | deductible applying to |  |
|  | deductible applying to |  |

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 90    days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 99 High Street, Boston, Massachusetts 02110, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision

1 of 2

of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at Lexington Insurance Company, c/o ACPC, P.O. Box 2310, Alpharetta, GA 30009. Claim reporting information can also be found on our website, www.lexingtoninsurance.com.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

Secretary                                        President

# LEXINGTON INSURANCE COMPANY

**Administrative Offices: 99 High Street, Boston, Massachusetts 02110**
(hereinafter called the Company)

## MANUSCRIPT DOMESTIC PROPERTY POLICY
## DECLARATIONS

**Policy Number:** 019946729                              **Renewal of:** 019946729

**Item 1. Named Insured:** AVANTE GROUP, INC.

       **Address:**      4000 HOLLYWOOD BLVD
                      HOLLYWOOD, FL 33021

**Item 2. Policy Period:**
From: 05/01/2014   To:  05/01/2015
(At 12:01 A.M. Standard Time at the address of the Named Insured shown above.)

**Item 3. Limit of Liability:** $10,000,000          **Part of** $10,000,000          **Excess of** $
(Maximum Limit of Liability in any one Occurrence)

**Item 4. Premium:**
Total Premium:           $ 509,500
Minimum Earned Premium:  $ 127,375

**Item 5. Perils:**
ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE INCLUDING FLOOD, EARTH MOVEMENT
AND EQUIPMENT BREAKDOWN/B&M AND AS FURTHER DESCRIBED IN THE POLICY FORM.

**Item 6. Description of Property Covered:**
REAL AND PERSONAL PROPERTY; MACHINERY AND EQUIPMENT; FURNITURE &
FIXTURES; IMPROVEMENTS AND BETTERMENT'S; INVENTORY; STOCK; EDP
HARDWARE, MEDIA AND DATA; BUSINESS INCOME - GROSS EARNING / EXTRA EXPENSE
AND AS FURTHER DESCRIBED IN THE POLICY FORM.

**Coinsurance:** NIL

**Item 7. Mortgagee Clause:**   Loss, if any shall be payable to:

NOT APPLICABLE

**Item 8. Forms Attached:**   See attached forms schedule

_Erik P. Nll_

————————————————————
**Authorized Representative OR**
**Countersignature (In states where applicable)**

PR6370 (04/13)

# LEXINGTON INSURANCE COMPANY

(hereinafter, the "Company")

**ADMINISTRATIVE OFFICES: 99 High Street, Boston, Massachusetts 02110**

### MANUSCRIPT DOMESTIC PROPERTY POLICY

#### SECTION I - COVERAGES AND LIMITS OF LIABILITY

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED: First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS: Per Certificates on File with the Company.

C. COVERAGE TERRITORY: Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D. LIMIT OF LIABILITY ("**Policy Limit**"): This Company's maximum liability in any one **Occurrence** as a result of all covered loss or damage regardless of the number of **Locations**, coverages, or perils insured under this Policy shall not exceed:

$10,000,000

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

If the words, **NOT COVERED** are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or **Covered Cause of Loss**, then no coverage is provided for that coverage or **Covered Cause of Loss**.

1. **Earth Movement:**

    a. $10,000,000    Annual Aggregate

    Subject to the Annual Aggregate Limit for all **Earth Movement** shown in Subparagraph E.1.a. above:

    b. $NOT COVERED    Annual Aggregate for all **Earth Movement** in all of the following states combined: California, Alaska, Hawaii, and Puerto Rico

    c. $1,000,000    Annual Aggregate for Pacific Northwest Earthquake Zone Counties (See Section VIII-Policy Definitions, Subparagraph E.1.)

    d. $1,000,000    Annual Aggregate for New Madrid Earthquake Zone Counties (See Section VIII - Policy Definitions, Subparagraph E.2.)

2. **Flood:**

    a. $10,000,000    Annual Aggregate

    b. $10,000,000    Subject to the Annual Aggregate Limit for all **Flood** shown in Subparagraph E.2.a. above, the Annual Aggregate as respects **Flood** for **Locations** wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

3. **Named Storm:**    $10,000,000    Regardless of the number of Coverages, **Locations** or Perils involved including, but not limited to, all **Flood** (however caused), wind, wind gusts, storm surges,

tornados, cyclones, hail, or rain, the maximum amount the Company will pay per Occurrence as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by **Flood** arises out of a Named Storm, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by **Flood** shall be the Sublimits of Liability for **Flood** as shown in Subparagraphs E.2.a. and E.2.b. above. However, if **Flood** is not covered, the maximum amount the Company will pay per **Occurrence** for all such Loss or Damage by Named Storm shall exclude Loss or Damage by **Flood**.

4. Debris Removal: The Company's total liability for Debris Removal per **Occurrence** for all insured **Locations** sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

    a. 25% of the amount of covered direct physical loss or damage payable for all Insured **Locations**; or

    b. $

5. Accounts Receivable:      $ 1,000,000

6. Civil or Military Authority:      Days, but in no event will the Company pay more than $ SEE ENDT 001

7. Contingent Time Element:      $ NOT COVERED

8. Demolition & Increased Cost of Construction: (See Section VI - Additional Coverages, Paragraph C.)

    a. Demolition Coverage A:      $10,000,000
    b. Demolition Coverage B:      $10,000,000
    c. Demolition Coverage C:      $10,000,000

9. Electronic Data and Media:      $ SEE ENDT 001

10. Equipment Breakdown:      $ SEE ENDT 001

11. Spoilage:      $

12. Errors and Omissions:      $ 5,000,000      , Subject to all other sublimits contained herein.

13. Extended Period of Indemnity:      365 Days

14. Extra Expense:      $ 10,000,000

15. Fine Arts:      $ 500,000

16. Fire Brigade Charges:      $ SEE ENDT 001

17. Ingress/Egress Coverage:      Days, but in no event will the Company pay more than $ SEE ENDT 001

18. Leasehold Interest:      $ NOT COVERED

19. Limited Pollution Coverage:      $      Annual Aggregate

20. **Miscellaneous Unnamed Locations:**      $ 5,000,000      , Subject to all other sublimits contained herein.

21. Newly Acquired Property:      90 Days, but in no event will the Company pay more than $ 10,000,000      , Subject to all other sublimits contained herein.

22. Ordinary Payroll:      Days

| 23. Professional Fees: | $SEE ENDT 001 | |
|---|---|---|
| 24. Service Interruption: | $ SEE ENDT 001 applies to this coverage. | . A qualifying period of     hours |
| 25. Transit: | $ 500,000 $ 500,000 | Per Conveyance Per Occurrence |
| 26. Valuable Papers and Records: | $ 1,000,000 | |

F.   MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1.   The actual adjusted amount of loss, less applicable deductible(s),

2.   As respects each **Location** insured by this Policy, one-hundred (100%) percent of the total combined stated values for all categories of insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that **Location** on the latest Statement of Values or other documentation on file with the Company, or

3.   The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G.   DEDUCTIBLE:   Each claim for loss or damage under this Policy shall be subject to a per **Occurrence** deductible amount of $10,000 unless a specific deductible shown below applies:

1.   **Flood:**

   a.   $25,000 Per **Occurrence**, except as follows in Subparagraph G.1.b.:

   b.     % of Total Insurable Values (TIV) at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of **SEE ENDT 002** any one **Occurrence** as respects **Locations** wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

2.   **Earth Movement:**

   a.   $25,000 Per **Occurrence**, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

   b.     % of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of     any one **Occurrence** as respects **Locations** in California, Hawaii, Alaska, and Puerto Rico;

   c.   2% of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $50,000 any one **Occurrence** as respects **Locations** in the Pacific Northwest Earthquake Zone   Counties (See   Section   VIII   -   Policy Definitions, Subparagraph E.1.);

   d.   2% of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage, subject to a minimum of $50,000 any one **Occurrence** as respects **Locations** in the New Madrid Earthquake Zone Counties (See Section VIII - Policy Definitions, Subparagraph E.2.

3.   **Windstorm or Hail:**

   a.   $25,000 Per **Occurrence** except as follows in Subparagraph G.3.b.:

   b.   **SEE ENDT 002** % of Total Insurable Values at the time of the loss at each **Location** involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless   of the number of Coverages, **Locations** or Perils involved (including, but not limited to, all **Flood**, wind, wind gusts, storm surges, tornados, cyclones, hail, or rain), and subject to a minimum deductible of     any one **Occurrence**.

4.   Time Element:   Days

The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single **Occurrence** greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one **Location**, the deductible shall apply against the total loss or damage covered by this Policy in any one **Occurrence**, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single **Occurrence**, then the Company shall apply both deductibles to the **Occurrence**; and

2. Covered Loss or Damage by Flood arises out of a Named Storm, then the Company shall apply the **Flood** deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

## SECTION II - COVERED CAUSES OF LOSS

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

         (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

         (2) By military, naval, or air forces; or

         (3) By an agent of any such government, power, authority, or force;

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

      including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

   c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a **Defined Peril** at the Insured **Location.**

e. The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants,** all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a **Defined Peril** at the Insured **Location.**

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location**(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l. i. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a **Defined Peril** at the Insured **Location.**

m. Error or omission in **Electronic Data and Media** machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

    i.   correctly recognize any date as its true calendar date;

    ii.  capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

    iii.  capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a **Defined Peril** at the Insured **Location.**

o.  **Fungus, Mold(s), Mildew, Spores or Yeast;** or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast.**

p.  Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q.  Loss or damage arising out of:

    i.   Building or any part of a building that is in danger of falling down or caving in,

    ii.  Any part of a building that has separated from another part of the building, or

    iii.  A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of **Collapse.**

r.  **Equipment Breakdown** to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s.  Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2.  The Company does not insure for loss or damage caused by any of the following:

  a.  Delay, loss of market, or loss of use.

  b.  Indirect, remote, or consequential loss or damage.

  c.  Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

  d.  Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

## SECTION III - INSURED PROPERTY

A.  INSURED PROPERTY: Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

1. Real property, including new buildings and additions under construction at an Insured Location, and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

5. Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any time element coverage provided by this Policy.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Land, land values, any substance in or on Land, or any alteration to the natural condition of the Land;

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

5. Drainage systems, pavements or roadways;

6. Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any property, equipment, or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

### SECTION IV - VALUATION

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. **Valuable Papers and Records** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. **Electronic Data and Media** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction for depreciation and obsolescence; [but not to exceed the cost to repair or replace the property with material of like kind and quality].

H. Leasehold improvements and betterments will be valued as follows;

   1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

   2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

      The Company will determine the proportionate value as follows:

      a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

      b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

      If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

   3. Nothing if others pay for repairs or replacement.

I. Fine Arts will be valued as follows;

   1. If there is no Agreed Value on file with the Company, then the lesser of:

      a. The cost to repair or replace the fine art, or

      b. The appraised value which will be determined as of the time of the loss.

   2. If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J. Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

   1. Any collection expenses over and above the normal collection costs;

   2. Interest charges on any loan to offset Impaired collections pending repayment of such sums that cannot be collected; and .

   3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts

Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the Land.

L. Property in Transit: In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the Occurrence, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

### SECTION V - TIME ELEMENT COVERAGE
### GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

a. normal operations resume, or

b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

b. To replace physically damaged or destroyed mercantile stock necessary to resume operations.

c. To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1. Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or ·

3. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

   a. The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

   b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

   The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

   Rental Value means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4. SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above). Such Soft Costs must be attributable to the loss.

   The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

   a. The amount of actual interim or construction financing interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;

   b. Realty taxes and ground rent if any;

   c. Advertising and promotional expenses;

   d. Cost of additional commissions;

e.  Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;.

f.  Project administration expense, but not including development fees;

g.  Insurance premiums; and

h.  Finder's fee refunds.

5.  CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a.  wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b.  wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7.  INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8.  EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a.  the date on which the liability of the Company for loss or damage would otherwise terminate; or

b.  the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13. starting with later of a. or b. above. This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D.  ADDITIONAL EXCLUSIONS: Section V - Time Element Coverage does not cover:

1.  IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other

than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS -

   a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

   c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4. TRANSIT- Any loss resulting from loss or damage to property in transit.

## SECTION VI - ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement, Flood,** or **Named Storm Sublimits of** Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1. Any collection expenses over and above the normal collection costs.

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the Insured **Locations** of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to **Electronic Data and Media.**

E. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any Location of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed **Locations** provisions of this Policy.

F. FINE ARTS: This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

1. Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a **Defined Peril** at the Insured **Location**; or

2. Loss or damage as a result of restoring, repairing, or retouching processes.

G. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

1. Fire brigade charges and any extinguishing expenses which the Insured incurs;

2. Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

H. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location. No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I. LEASEHOLD INTEREST: If insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover **The Interest of the Insured as Lessee** or **The Interest of the Insured as Lessor**, whichever is applicable, but only for the first three months succeeding the date of the loss and the **Net Lease Interest** shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2. Improvements and betterments to real property which are not covered under any other section of this Policy; and

3. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this section shall mean:

1. **The Interest of the Insured as Lessee** is defined as:

   a. the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

   b. the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2. **The Interest of the Insured as Lessor** is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3. **Net Lease Interest** is defined as that sum, which placed at 6% interest compounded annually will be equivalent to **The Interest of the Insured as Lessee or Lessor.**

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J. LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and

necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from **Land** or water at an Insured **Location** when such **Land** or water is contaminated or polluted due to a Covered Cause of Loss at the Insured Location. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K.  NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy. Coverage under this additional coverage ceases at the earlier of the following dates:

1.  Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

2.  When the newly acquired location is bound by the Company; or

3.  The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed **Locations** provisions of this Policy.

L.  PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

M.  PROFESSIONAL FEES: This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy. This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities. This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N.  PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any **Location** within the Coverage Territory when removed from the Insured **Locations** for the purpose of being repaired or serviced, excluding:

1.  Personal property insured under another Policy or floater;

2.  Personal property excluded under this Policy; or

3.  Personal property removed from the Insured **Locations** for normal storage or processing or preparation for sale or delivery.

O.  SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption. None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P.  SPOILAGE:  This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss.  The Company shall be liable for direct physical loss or damage to:

1.  Perishable goods due to spoilage; or

2.  Perishable goods due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have applied.  Otherwise payment will be determined in accordance with Section IV - Valuation of this Policy.

Perishable goods means personal property:

1.  Maintained under controlled conditions for its preservation, and

2.  Susceptible to loss or damage if the controlled conditions change.

Q.  TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1.  Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2.  The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3.  Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage:

1.  Samples in the custody of salespersons or selling agents.

2.  Property insured under import or export ocean cargo policies.

3.  Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4.  Shipments made by air unless via regularly scheduled airlines.

5.  Property shipped by mail.

6.  Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7.  Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. VALUABLE PAPERS AND RECORDS: This Policy is extended to cover **Valuable Papers and Records**.

## SECTION VII - CONDITIONS

A. ABANDONMENT: There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. ASSIGNED ADJUSTER: It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Lexington Insurance Company's "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Lexington Insurance Company reserves the right to associate a Lexington/AIG staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Lexington retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name:

Adjusting Firm

E. ASSIGNMENT: The Insured may not be assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G.  CANCELLATION:

1.  This Policy can be canceled by the First Named Insured by providing the Company with:

a.  An advanced written request for cancellation stating when the cancellation shall be effective, and

b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Company by giving to the Insured at least ninety ( 90) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation. Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3.  The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H.  CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I.  CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located. However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J.  DIVISIBLE CONTRACT: Subject to Condition L., if the **Locations** described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K.  INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L.  MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M.  OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply

only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N.  PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit.**

O.  REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P.  REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1.  Give prompt written notice of any loss or damage to the Company,

2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3.  Protect the property from further loss or damage,

4.  Separate the damaged and undamaged personal property,

5.  Maintain such property in the best possible order, and

6.  Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7.  Furnish all other documents or insurance policies that the Company may reasonably require,

8.  Allow the Company to access and inspect any of the damaged or undamaged property, and

9.  Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.  The time and origin of the loss,

2.  The interest of the Insured and of all others in the property,

3.  The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,

4.  All other contracts of insurance, whether collectible or not, covering any of said property, and

5.  Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q.  REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured **Locations.**

Such values shall be reported separately for each **Location,** with separate figures shown for each type of coverage at each **Location.** The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash

Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R.   SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from

subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S.   SERVICE OF SUIT:  In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T.   SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U.   SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an Occurrence, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;

2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.  '

W. SUSPENSION:  Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, prorata for the period of suspension.

X. TERRITORIAL LIMITATIONS  Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

### SECTION VIII - POLICY DEFINITIONS

A. **Aircraft or Vehicle Impact** means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. **Collapse** means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. **Defined Peril** means Fire; Lightning; **Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse** (unless otherwise excluded under Section II - Perils Excluded, Subparagraph B.1.q.); or **Leakage From Fire Protection Equipment**.

D. **Earth Movement** means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;

2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include

contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence;

and includes tsunami.

E. **Earth Movement Counties:** As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

1. **Pacific Northwest Earthquake Zone Counties**

   **Washington:** Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

2. **New Madrid Earthquake Zone Counties**

   **Arkansas:** Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

   **Illinois:** Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

   **Indiana:** Posey, Vanderburgh, Gibson, Warrick, Pike

   **Kentucky:** Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

   **Mississippi:** Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

   **Missouri:** Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

   **Tennessee:** Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. **Electronic Data and Media** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. **Equipment Breakdown** means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. **Explosion:** Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Combustion gas turbines;

4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will Include loss or damage arising or resulting from;

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition;

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I.  **Fine Arts** means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

**Fine Arts** does not mean and does not include any item which would qualify as **Valuable Papers and Records.**

J.  **Flood** means, whether natural or manmade, **Flood** waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a **Flood.**

K.  **Fungus, Mold(S), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

L.  **Land** means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M.  **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the **Fire Protection Equipment** for the Insured **Location** or for any adjoining **Locations;**

2. Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. **Location** means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear **Land** space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. **Miscellaneous Unnamed Location(s)** means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The **occurrence** must occur during the policy period.

If more than one event for **Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood** or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence**. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. **Riot, Strike or Civil Commotion** means riot and civil commotion including;

1. Acts of striking employees while occupying the Insured **Location**; and

2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. **Smoke** means loss or damage ensuing from a sudden and accidental release of **Smoke**. The peril of **Smoke** does not include loss or damage caused by **Smoke** from agricultural smudging or industrial operations.

T. **Valuable Papers and Records** means documents that are written, printed, or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2. Legal and financial agreements such as deeds and mortgages;

3. Addressograph plates; and

4. Any electrically produced data such as printouts, punched cards, tapes or discs.

**Valuable Papers and Records** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

**Valuable Papers and Records** does not mean and does not include any item which would qualify as Fine Arts.

U. **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, insured Property. **Vandalism and Malicious Mischief** does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. **Windstorm** or **Hail**: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

**Secretary**

**President**

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:   019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

**COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT**

This policy is hereby amended as follows:

A. The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

   1. correctly recognize any date as its true calendar date;

   2. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

   3. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

   Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

   This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow, sudden and accidental breakdown of an object, including mechanical and electrical breakdown.

All other terms, conditions and exclusions of this policy remain unchanged.

_Eric P. Will_

AUTHORIZED REPRESENTATIVE
OR Countersignature (In states where applicable)

69813 (2/98)

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

**ECONOMIC SANCTIONS ENDORSEMENT**

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

All other terms and conditions of the policy remain the same.

**Authorized Representative**

©2013 American International Group, Inc.
All Right Reserved.                    Page 1 of 1

## ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### MOLD / FUNGUS  EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

    (a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

    (b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

    (c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

**Authorized Representative OR**
**Countersignature (in states where applicable)**

LX9512 (08/02)

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is agreed that the following special terms and conditions apply to this policy:

1.  The limit of liability or Amount of Insurance shown on the face of this policy, or endorsed on this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

    The term "occurrence" shall mean, any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which may not be earlier than the time when the first loss to covered property occurs.

2.  The premium for this policy is based upon the Statement of Values provided to the Insurer(s) by or on behalf of the Insured and kept on file by the Insurer(s). In the event of loss under the policy, the liability of the Insurer(s) shall be limited to the least of the following:

    a.) The actual adjusted amount of loss, less applicable deductible(s);

    b.) As respects each location insured by this Policy, 100% percent of the total combined stated values for all categories of covered property (e.g. building, contents) and other covered exposures (e.g., business income, extra expense, rental loss), shown for that location on the latest statement of values or other documentation on file with the insurer.

    c.) Any other Limit of Liability or Sublimit of Insurance or Amount of Insurance specifically stated in this policy to apply to any particular insured loss or coverage or location.

PR9014 (08/06)
LX1083

## ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:   019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

### PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

PR9514 (09/02)

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.: 019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

### WAR AND TERRORISM EXCLUSION ENDORSEMENT
(Applies to locations outside the United States of America, its territories and possessions)

This endorsement modifies insurance provided by the policy:

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto, it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

1.   War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.   Any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1. and/or 2. above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
Countersignature (in states where applicable)

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

**1. Property Not Covered**

This policy does not cover land, land values or water.

**2. Pollution and Contamination Exclusion.**

This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency.  Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief.  This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3. Asbestos, Dioxin or Polychlorinated Biphenols Exclusions**

This policy does not cover -

a)  Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.

b)  Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

c)  Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended

**4. Debris Removal Exclusion**

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a)  Extract contaminants or pollutants from the debris; or

b)  Extract contaminants or pollutants from land or water; or

    c)  Remove, restore or replace contaminated or polluted land or water; or

    d)  Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

**5.  Authorities Exclusion**

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.: 019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

---

### SUBLIMIT ENDORSEMENT

In consideration of the premium charged, it is hereby agreed that the following shall be made a part of Manuscript Domestic Property Policy form PR8371 (02/12) - Section 1 Coverages and Limits of Liability:

| | |
|---|---|
| 6. $1,000,000 or 30 Days | Per Occurrence for **Civil or Military Authority**. Insured physical loss or damage must occur within one (1) statute mile from the Insured's premises in order for coverage to apply. |
| 9a. Included | Per Occurrence for **Electronic Data Processing (EDP) Systems (Equipment)** |
| 9b. $250,000 | Per Occurrence for **Electronic Data Processing (EDP) Media, Data, Programs and/or Software** |
| 16. $500,000 | Per Occurrence for **Fire Brigade Charges and Extinguishing Expenses** |
| 17. $1,000,000 or 30 Days | Per Occurrence for **Ingress / Egress**. Insured physical loss or damage must occur within one (1) statute mile from the Insured's premises in order for coverage to apply. |
| 23. $500,000 | *Per Occurrence for **Loss Adjustment Expenses and/or Professional Fees** |
| 24. $10,000,000 | Per Occurrence for **Service / Off Premises Power Interruption** including Transmission & Distribution Lines. Insured physical loss or damage must occur within one (1) statute mile from the Insured's premises in order for coverage to apply. |
| 27. Included | Per Occurrence for **Business Interruption including 90 days Ordinary Payroll** |
| 28. $10,000,000 | Per Occurrence for **Rental Value/Rental Insurance** |
| 29. $100,000 | Per Occurrence for **Architects and Engineering Fees** |
| 30 Not Covered | Per Occurrence and Annual Aggregate for **Biological and Chemical Terrorism** |
| 31. $5,000,000 | Per Occurrence for **Deferred Payments** |
| 32. $2,000,000 | Per Occurrence for **Evacuation Expense**, subject to; $500,000 for no physical loss per scheduled location, $25,000 Voluntary Evacuation Annual Aggregate |

### ENDORSEMENT # 001

| | | |
|---|---|---|
| 33. | $250,000 | Per Occurrence and Annual Aggregate for **Land and Water Decontamination and Clean Up Expense** |
| 34. | $250,000 | Per Occurrence for **Land Improvements** (subject to $1000 maximum for any one tree, plant or shrub). |
| 35. | $100,000 | Per Occurrence for **Soft Costs** |
| 36. | $10,000,000 | Per Occurrence for the Peril of **Equipment Breakdown**, including; |
| 37. | Included | **Equipment Breakdown: Business Interruption, Extra Expense** |
| 38. | $5,000,000 | **Equipment Breakdown: Demolition and Increased Cost of Construction** |
| 39. | $1,000,000 | **Equipment Breakdown: Data Restoration** |
| 40. | $1,000,000 | **Equipment Breakdown: Hazardous Substances** |
| 41. | $10,000,000 | **Equipment Breakdown: Newly Acquired Property for a period of 90 days, if not reported to the Company in that 90 day period then coverage ceases.** |
| 42. | $10,000,000 | **Equipment Breakdown: Service Interruption (BI / EE) - 24 hour waiting period** |
| 43. | $10,000,000 | **Equipment Breakdown: Perishable Goods / Spoilage** |
| 44. | 365 Days | **Equipment Breakdown: Extended Period of Restoration** |

All other terms and conditions of the policy remain unchanged.

_Erik P. Mll_

**Authorized Representative OR
Countersignature (in states where applicable)**

### ENDORSEMENT # 002

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.: 019946729

Issued to: AVANTE GROUP, INC.

By: LEXINGTON INSURANCE COMPANY

---

### DEDUCTIBLE ENDORSEMENT

In consideration of the premium charged, it is agreed that Manuscript Domestic Property Policy Form PR8371 (02/12) G. Deductible Is amended as follows:

### G. DEDUCTIBLE

1. **Flood**
b. For any one occurrence as respects locations wholly or partially situated within **Special Flood Hazard Areas (SFHA)**, areas of 100-year flooding as defined by the **Federal Emergency Management Agency (FEMA)**, excess of **$500,000** on buildings, **$500,000** on contents and **$100,000** Business Interruption.

3. **Windstorm or Hail:**
b. **5%** of Total Insurable Values at the time of the loss at each location involved in the loss or damage arising out of a **Named Storm** (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression) situated in a designated **Tier 1 County**, regardless of the number of Coverages, Locations or Perils Involved (including but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum deductible of **$250,000** any one occurrence.

5. **Equipment Breakdown:**
a. **$10,000** Per Occurrence.

6. **Evacuation Expense:**
a. **$25,000** Per Occurrence

24 Hour Waiting Period plus appropriate deductible as respects losses caused by interruption by Civil or Military Authority, Ingress/Egress and Service/Off Premises Power Interruption.

All other terms and conditions of the policy remain unchanged.

*Erik P. Nill*

---
**Authorized Representative OR**
**Countersignature (In states where applicable)**

# LEXINGTON INSURANCE COMPANY

### Administrative Offices: 99 High Street, Boston, Massachusetts 02110

Policy Number:        019946729

Named Insured:        AVANTE GROUP, INC.

Policy Effective Date: 05/01/2014

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY

FL HB # 853

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and   independent   agents   in   the   United   States   by   visiting   our   website   at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)

**FORMS SCHEDULE**

Named Insured: AVANTE GROUP, INC.

Policy No: 019946729                                    Effective Date: 05/01/2014

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PR9019 | 01/94 | | STANDARD PROPERTY CONDITIONS |
| PR8370 | 04/13 | | MANUSCRIPT DOMESTIC PROPERTY POLICY DECLARATIONS |
| PR8371 | 02/12 | | MANUSCRIPT DOMESTIC PROPERTY POLICY |
| 69813 | 2/98 | | COMBINED PROPERTY/B&M MILLENNIUM |
| PR4225 | 07/13 | | ECONOMIC SANCTIONS ENDORSEMENT |
| LX9512 | 08/02 | | MOLD/FUNGUS EXCLUSION |
| PR9014 | 08/06 | | OCCURRENCE LIMIT OF LIABILITY |
| PR9514 | 09/02 | | PROPERTY ENDORSEMENT |
| NMA2918 | 08/01 | | WAR AND TERRORISM EXCLUSION |
| PR9015 | 08/06 | | POLLUTION, CONTAMINATION, DEBRIS REMOVAL EXCLUSION |
| | | 001 | SUBLIMIT ENDORSEMENT |
| | | 002 | DEDUCTIBLE ENDORSEMENT |

DOC018(Ed. 12/87)
LX0295

# EXHIBIT
# B



AIG Commercial Property
Claims
7028 W. Waters Ave.
#204
Tampa, FL 33634
www.aig.com

Elizabeth Barry-Parker
General Adjuster
Commercial Property Claims
T  (813) 541-6973
C (813) 541-7122
F (844) 666-2450/
beth.parker@aig.com

August 1, 2016

**Via Email and Certified Mail 7015 0640 0000 0559 6921**

AG Holdings, Inc.
c/o Gina Clausen Lozier, Esq. - gclausen@bergersingerman.com
Berger Singerman LLP
One Town Center Rd.
Suite 301
Boca Raton, FL 33486

|        |               |                                      |
|--------|---------------|--------------------------------------|
| **Re:** | **Insured:** | **AG Holdings, Inc.** |
|        | **Claim No.:** | **7595278775US** |
|        | **Date/Loss:** | **multiple – exact dates unknown** |
|        | **Policy No.:** | **019946729** |
|        | **Loss Location:** | **4601 Sheridan Street, Hollywood, FL** |

Dear Insured:

As you are aware I am a General Adjuster with the Property
Claims Field Group of AIG Claims, Inc., which is authorized by Lexington
Insurance Company ("Lexington") to handle the above referenced claim.
This letter will serve to detail Lexington's position, based on the careful
evaluation of all information currently available, that the Policy does not
provide coverage for the Insured's claim.

## I. BACKGROUND

Lexington issued a Manuscript Domestic Property Policy bearing
policy number 019946729 with effective dates of May 1, 2013 to May 1,
2014 and a renewal policy with effective dates of May 1, 2014 to May 1,
2015 (the "Policy") to the Insured, AG Holdings, Inc. Subject to its terms
and conditions, the Policy provides property and time element coverages
for various locations including the subject building located at 4601
Sheridan Street, Hollywood, FL (the "Building"). The Policy has a $10,000
per occurrence deductible.

Lexington received notice of the claimed loss on May 28, 2015.
Specifically, Lexington was notified of a claim for water damage to the
Building's interior finishes resulting from rain water intrusion and for lost
business income and extra expense ("BI/EE") related to the water
damages. Initially, the claimed date of loss was reported as May 1, 2014.
Lexington has since been informed that the claimed loss relates to a

1



series of rain water intrusion events the first of which occurred on March 31, 2014, approximately 14 months before Lexington received notice of the claim. Lexington has also been informed that an unknown number of the water intrusion events continued to occur through May of 2015.

After receiving notice of the claim Lexington's representatives immediately reached out to the Insured's contact person, David Loper, and coordinated an initial inspection which took place on June 3, 2015. However, by that time the Building's interior had been completely gutted. Because the Insured failed to provide prompt notice of the loss, Lexington never had an opportunity to inspect the claimed damages to the Building, which has severely prejudiced Lexington's ability to evaluate and adjust the claim.

Although Lexington was never provided with an opportunity to inspect the claimed damages to the Building, it has made every effort to overcome the resulting prejudice and to investigate and adjust the Insured's claim. Specifically, Lexington has made repeated requests to the Insured for supporting documentation, including documentation to evidence the damages to the Building's interior and the pre-loss condition of the Building. Similarly, Lexington has repeatedly requested that the Insured provide documentation and information to substantiate the claimed BI/EE loss. Additionally, Lexington requested that the Insured representative, David Loper, submit to an examination under oath in order to answer questions pertaining to various topics, including the basis of the Insured's claim, the calculation of the amount of the Insured's claim and the documentation provided in support of the claim.

The documentation and information provided by the Insured has not served to alleviate the prejudice caused by the Insured's failure to provide timely notice. The Insured has not provided photographs or other documentation or support to show the condition of the Building prior to the claimed water intrusion events. The information and documentation from the Insured is also insufficient to determine which aspects of the claimed Building damages were purportedly caused by water damage, and which aspects of the claimed Building damages were expected to occur in relation to the ongoing renovations to the Building during that time period.

The Insured has also failed to provide information or documentation necessary to substantiate the BI/EE portion of its claim. In fact, the documentation and information that has been provided shows that portions of the claimed BI/EE loss were not caused by the water intrusion events as claimed, but rather resulted from general construction

2



issues (noise, vibrations, etc.) that were expected to occur during the planned renovations.

From the information and documentation Lexington has been able to obtain it is known that the water entered the Building when the Building's walls and/or roof system were being replaced as part of a planned renovation. These renovations were being performed by the Insured's contractor, Burke Construction. The Insured advised Lexington that the water intrusion events were caused by Burke's failure to properly protect the Building interior from rain during the renovations and that the water intrusion events occurred on multiple occasions spanning over more than a full year. Lexington also understands that the Insured and Burke have sued each other in relation to the Building damages and the Insured's loss of use of the Building. One of the issues being addressed in that lawsuit is the extent to which the renovation construction schedule was delayed by the water intrusion events and the extent to which it was delayed by other factors.

During his EUO, Mr. Loper also advised that the interior damages to the Building were caused by, or at least related to mold and mildew growth.

## II. POLICY PROVISIONS

***

### MANUSCRIPT DOMESTIC PROPERTY POLICY

### SECTION I – COVERAGES AND LIMITS OF LIABILITY

***

E.    **SUBLIMITS OF LIABILITY:** Sublimits of Liability stated below are subject to and not in addition to the Policy Limit shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per Occurrence unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is**

3



provided for that coverage or Covered Cause of Loss.

***

13.   Extended Period of Indemnity      **365 Days**

***

**SECTION II - COVERED CAUSES OF LOSS**

A.   **PERILS INSURED**: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B.   **PERILS EXCLUDED:**

1.   The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

***

**f.** Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

***

**h.** Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

***

4



o. Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

2. The Company does not insure for loss or damage caused by any of the following:

a. Delay, loss of market, or loss of use.
b. indirect, remote, or consequential loss or damage.

\*\*\*

## SECTION V - TIME ELEMENT COVERAGE
## GROSS EARNINGS
\*\*\*

B. **PERIOD OF INTERRUPTION:** In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a. normal operations resume, or

    b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

    whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

    \*\*\*

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In

5



calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of interruption does not include any additional time

1.   Required for restaffing or retraining employees, or

2.   Due to the Insured's inability to resume operations for reasons other than those enumerated in 8.2.a. through 8.2.c., inclusive, above, or

3.   Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C.   **ADDITIONAL TIME ELEMENT COVERAGES**

1.   **EXTRA EXPENSE:** This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

a.   The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b.   The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

2.   The Insured agrees to use any suitable property or service owned or controlled by the

6



Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2.  **RENTAL VALUE:** As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

Rental Value means the sum of:

a.  The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises, and

b.  The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

c.  The fair rental value of any portion of such property which is occupied by the Insured.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

8.  **EXTENDED PERIOD OF INDEMNITY:** Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

7



a.  the date on which the liability of the Company for loss or damage would otherwise terminate; or

b.  the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section 1., Subparagraph E.13. starting with later of a. or b. above. *This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.*[1]

D.  **ADDITIONAL EXCLUSIONS**: Section V - Time Element Coverage does not cover:

1.  **IDLE PERIODS** - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

\*\*\*

**SECTION VII – CONDITIONS**
\*\*\*

L.  **MISREPRESENTATION AND FRAUD**: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

\*\*\*

M.  **OTHER INSURANCE / EXCESS INSURANCE / UNDERLYING INSURANCE**: *In the event there is*

---

[1] Emphasis added.



other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

***

P.   **REQUIREMENTS IN CASE OF LOSS**: The Insured shall:

1.   Give prompt written notice of any loss or damage to the Company,

***

3.   Protect the property from further loss or damage,

4.   Separate the damaged and undamaged personal property,

5.   Maintain such property in the best possible order, and

6.   Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7.   Furnish all other documents or insurance policies that the Company may reasonably require,

8.   Allow the Company to access and inspect any of the damaged or undamaged property, and

9.   Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

9



1. The time and origin of the loss,
2. The interest of the Insured and of all others in the property,
3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,
4. All other contracts of insurance, whether collectible or not, covering any of said property, and
5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

***

U.   **SUBROGATION**: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an Occurrence, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;
2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

***

**SECTION VIII – POLICY DEFINITIONS**

10



**...**

**K.** **Fungus, Mold(S), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms, **...**

**P.** **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period. **...**

**V.** **Windstorm or Hail**: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for: **...**

    **2.** Loss or damage to the interior of any building or structure, or the property inside building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow or dust enters;

**...**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

It is agreed that the following special terms and conditions apply to this policy: **...**



The term "occurrence" shall mean, any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which may not be earlier than the time when the first loss to covered property occurs. **\*\*\***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**MOLD / FUNGUS EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

    (a)    fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

    (b)    mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

    (c)    spores means any dormant or reproductive body produced by or arising or emanating out

12



of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

### III. CONCLUSION

Based upon the thorough evaluation of the Insured's claim, and all documentation and information presently available for Lexington's consideration, Lexington is denying coverage for the claim. Lexington has determined that the Insured failed to comply with several post loss duties and conditions under the Policy. Specifically, the Insured failed to provide timely notice of the loss, failed to provide documentation and information in support of claim and failed to provide Lexington with any opportunity to inspect the claimed damages. Plaintiff's failure to comply with its post loss duties and obligations has severely prejudiced Lexington's ability to evaluate and adjust the claimed physical damages to the Building. It has also prejudiced Lexington's ability to evaluate the BI/EE portion of the Insured's claim. Accordingly coverage is denied.

From what information and documentation Lexington has been able to obtain, Lexington believes there may be additional grounds for the denial of the Insured's claim. The Insured also failed to comply with its post loss duty to protect the Building from further damage after the water intrusion events began to occur. As noted by Mr. Loper during the EUO, the water intrusion events continued to occur for more than a full year. However, as Lexington was not provided with an opportunity to inspect the claimed damages, and has never been provided with photos or other documentation showing the existence or progression of the damages, it is difficult to evaluate the extent to which the Insured has failed to comply with its obligation to prevent further damage after the time of loss.

Similarly, Lexington's investigation was further prejudiced by the fact that it was never able to observe the existence or spread of mold and mildew in the Building's interior finishes. However, to the extent the claimed physical damages to the Building were caused by, arose out of, resulted from or were contributed to by mold and mildew, the damages are excluded from coverage under the Policy. Based on Mr. Loper's statements during the EUO, it is believed the much if not all of the



damage to the Building's interior finishes was related to mold and mildew problems.

The above quoted construction defect exclusion set forth in Section II, subsection (B)(1)(f) of the Policy, and the deterioration exclusion set forth in Section II, subsection (B)(1)(h) of the Policy may also apply to the Insured's claim.

In relation to the BI/EE portion of the claim, the Insured has failed to substantiate the existence of a Period of Interruption for its BI/EE claim. The Insured has not provided Lexington with requested information regarding the dates on which the suites occupied by the Insured's tenants were physically damaged, nor has the Insured demonstrated when the Tenants could have returned to the Building had the Building been repaired in a timely manner. Furthermore, to the extent that the Insured is claiming any BI/EE during an Extended Period of Indemnity, those losses would be excluded under the Policy because lost rental value and extra expense are Additional Time Element Coverages to which the Extended Period of Indemnity does not apply.

Additionally, it appears as though many of the BI/EE items included in the Insured's claim relate to lost rents, moving expenses and lease termination settlements with tenants that left the Building for reasons other than the water intrusion events. To the extent the Insured intentionally made material misrepresentations or concealed material facts pertaining to the claim, the Insured's actions could serve to void the Policy in its entirety.

Lexington's coverage position is based on the information currently available and Lexington does not waive any of its rights or defenses under the Policy or at law. Lexington expressly reserves all of its rights under the policy including, but not limited to the right to assert additional grounds for disclaimer of coverage, including but not limited to those set forth above.

Sincerely,

Elizabeth Barry-Parker
General Adjuster

Cc: Teresa Cowart, Lockton Companies – sent via email
tcowart@lockton.com